UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOHN NYGRA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 2:20-cv-00146-RLM-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Andrew M. Saul,* | ) |
| *Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff John Nygra appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). The appeal was referred to the undersigned Magistrate Judge on July 7, 2020, by District Judge Robert L. Miller pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72(b), and General Order 2019-19 for the issuance of a Report and Recommendation. (ECF 12).

Having reviewed the record and the parties' arguments, I RECOMMEND that the Commissioner's decision be REVERSED, and the case REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation. This Report and Recommendation is based on the following facts and principles of law.

### I.  FACTUAL AND PROCEDURAL HISTORY

Nygra applied for DIB in September 2016, alleging disability since July 1, 2015. (ECF 17 Administrative Record ("AR") 15, 183). Nygra's claim was denied initially and upon reconsideration. (AR 15). On November 28, 2018, administrative law judge ("ALJ") Marc

Jones held an administrative hearing at which Nygra, who was represented by counsel; Nygra's father, a witness; and a vocational expert testified. (AR 30-55). On February 5, 2019, the ALJ rendered an unfavorable decision to Nygra, concluding that he was not disabled because he could perform a significant number of jobs in the national economy, including bench assembler, electronics worker, and production assembler. (AR 15-25). The Appeals Council denied Nygra's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner, 20 C.F.R. § 404.981.

Nygra filed a complaint with this Court on April 9, 2020, seeking relief from the Commissioner's decision. (ECF 1). In his appeal, Nygra alleges that a remand is necessary because the ALJ failed to properly evaluate his symptom testimony and his residual functional capacity ("RFC"). (ECF 20 at 4-17).

At the time of the ALJ's decision, Nygra was forty-seven years old (AR 183); had a high school education and specialized job training in the building trades (AR 208); and had work experience as an electrician assistant, journeyman carpenter, production fabricator, and recycling site supervisor (*id.*). When filing his DIB application, Nygra alleged disability due to asthma, depression, and high blood pressure. (AR 207).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as

2

adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the [ALJ] applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

#### A. The Law

Under the Act, a claimant is entitled to DIB if he establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process,

requiring consideration of the following issues, in sequence: "(1) whether the claimant is currently [un]employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) . . . whether [he] can perform [his] past relevant work, and (5) whether the claimant is incapable of performing any work in the national economy."[1] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); *see also* 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B.  The Commissioner's Final Decision

On February 5, 2019, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 15-25). The ALJ found at step one that Nygra had not engaged in substantial gainful activity after July 1, 2015, his alleged onset date, and at step two, that his anxiety and depression were severe impairments. (AR 17). At step three, the ALJ concluded that Nygra did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 18).

Before proceeding to step four, the ALJ determined that Nygra's symptom testimony was not entirely consistent with the medical evidence and other evidence of record with respect to his

---

[1] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

limitations. (AR 21). The ALJ then assigned Nygra the following RFC:

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with non-exertional limitations. Specifically, the claimant can never climb ladders/ropes/scaffolds, never work at unprotected heights, never work around dangerous machinery with moving mechanical parts, and never operate a motor vehicle as part of his work-related duties. The claimant is limited to simple, work-related decisions and simple, routine tasks with no assembly line work or strictly-enforced daily production quotas. The claimant can never interact with the public. The claimant is capable of working in proximity to other co-workers, but only with brief, incidental interaction with others, and no tandem job tasks requiring cooperation with other workers to complete the task. The claimant is capable of working where supervisors occasionally interact with him throughout the workday.

(AR 20).

Based on the assigned RFC and the vocational expert's testimony, the ALJ found at step four that Nygra was unable to perform any of his past relevant work. (AR 23). At step five, the ALJ found that Nygra could perform a significant number of unskilled jobs in the economy, including bench assembler, electronics worker, and production assembler. (AR 24-25). Therefore, Nygra's application for DIB was denied. (AR 25).

## C. Symptom Testimony

When assessing Nygra's symptom testimony, the ALJ found that Nygra's statements about the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (AR 21). The reasons the ALJ cited were: (1) Nygra's daily activities, (2) that he received little to no mental health treatment before or after his five-week mental hospitalization in 2017 and did not consistently comply with prescribed treatment, and (3) a lack of objective medical evidence substantiating the severity of his mental impairments. (AR 21-22; *see also* AR 23).

5

Nygra challenges the ALJ's consideration of his symptom testimony, alleging that the ALJ did not properly evaluate it in accordance with Social Security Ruling ("SSR") 16-3p. (ECF 20 at 13-17). Specifically, Nygra argues that the ALJ failed to explain how his activities of daily living were inconsistent with the medical evidence and his testimony, and failed to fairly consider his treatment history and medical noncompliance given his mental illness. (*Id.*) Nygra also contends that the ALJ erred when assessing the testimony of his father. (*Id.*).

    a. <u>Legal Standard</u>

"In determining whether an individual is disabled, [the ALJ is to] consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). An ALJ's consideration of a claimant's symptom testimony is entitled to special deference because the ALJ is in the best position to evaluate the credibility of a witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), his determination will be upheld unless it is "patently wrong," *Powers*, 207 F.3d at 435. *See Green v. Saul*, 781 F. App'x 522, 527 (7th Cir. 2019) (If an ALJ's judgment of a claimant's credibility "was tied to evidence in the record and was not patently wrong, we may not disturb it." (citation omitted)); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's consideration of a claimant's symptom testimony because the ALJ's decision was based on "serious errors in reasoning rather

6

than merely the demeanor of the witness").

Having said that, an ALJ must base his credibility determination on "specific reasons supported by the record." *Richards v. Berryhill*, 743 F. App'x 26, 29 (7th Cir. 2018) (citation omitted). The regulations require the ALJ to analyze a variety of factors in making a determination of a claimant's subjective symptoms. These factors include: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medications; any additional treatments an individual receives for relief of symptoms; any non-treatment measures taken to relieve symptoms; and any other factors concerning an individual's functional limitations and restrictions due to symptoms. SSR 16-3p, 2017 WL 5180304, at *7-8.

b. <u>Daily Activities</u>

Nygra acknowledges that an ALJ should consider a claimant's daily activities when assessing his symptom testimony. *See* 20 C.F.R. § 404.1529(c)(3). He argues, however, that the ALJ erred by using his daily activities to discount his symptom testimony without explaining how the activities were actually inconsistent with the medical evidence and his testimony. (ECF 20 at 13 (citing *Zurawski*, 245 F.3d at 887)).

In considering Nygra's daily activities, the ALJ wrote that Nygra does not require reminders for personal care, medication administration, or reminders to go places; can follow instructions well; can pay attention and finish what he starts; can prepare light meals and perform light household chores, including yard work; can drive a vehicle and go out alone; and can manage his own finances. (AR 22 (citing AR 42-43, 224, 229-32, 493)).

But in considering these activities, the ALJ relied primarily on reports completed prior to

7

Nygra's 2017 decompensation and five-week hospitalization for mental illness. (*See* AR 524-25). The ALJ then cherry-picked the hearing testimony of Nygra's father, with whom Nygra lives and who stated that he does all the shopping for Nygra and had to establish rules for Nygra concerning showering, sleeping, and meals. (AR 22; *see* AR 47-49 ("[H]e used to go ten to 12 days without a bath . . . and wore the same clothes.")). In doing so, the ALJ seemingly minimized the structure that Nygra's father provided for Nygra after his hospitalization, focusing instead on dated reports completed prior to Nygra's 2017 decompensation. *See Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) (reminding that an "ability to struggle through the activities of daily living does not mean that [a claimant] can manage the requirements of a modern workplace"). The ALJ also ignored the testimony that Nygra "takes at least two naps a day for a couple of hours each." (AR 47); *see Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018) ("ALJs are not permitted to cherry-pick evidence from the record to support their conclusions, without engaging with the evidence that weighs against their findings."); *see generally Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) ("[N]o employer is likely to hire a person who must stop working and lie down two or three times a day for an hour at a time . . . .").

While an ALJ is entitled to consider a claimant's daily activities when assessing his symptom testimony, the ALJ must do so fairly. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Here, the ALJ relied—at least in part—on dated or cherry-picked evidence when considering Nygra's daily activities. Consequently, "the ALJ did not build the bridge between [Nygra's] ability to perform certain daily activities and its bearing on his ability

8

to work a full-time . . . job." *Castaneda v. Colvin*, No. 14 C 7023, 2016 WL 427511, at *2 (N.D. Ill. Feb. 4, 2016); *see also Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010) (stating that the ability to engage in activities of daily living "need not translate into an ability to work full time," but may mean nothing more than that the claimant "can survive outside a mental institution or halfway house"); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) (articulating that the ALJ's citation of plaintiff's minimal daily activities, including performance of household chores and caring for her teenage son, when discounting a doctor's opinion equated to saying merely that "the [claimant] is not a raving maniac who needs to be locked up").

    c. <u>Treatment History and Medication Noncompliance</u>

The bigger problem, however, is the ALJ's discounting of Nygra's symptom testimony based on his sparse treatment history and failure to consistently comply with prescribed medications. In that regard, Nygra argues that the ALJ unfairly discounted his symptom testimony based on his treatment history, without explaining why such history—which included a five-week mental hospitalization—was inconsistent with his testimony that he still suffers from delusions. (ECF 20 at 16). Nygra also contends that the ALJ failed to consider that his mental illness may have contributed to his failure to seek treatment and consistently take his medications. (*Id.* at 17).

    SSR 16-3p specifically instructs:

> We will not find an individual's symptoms inconsistent with the evidence in the record on [the claimant's failure to seek or comply with treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.

9

2017 WL 5180304 at *9.

Here, the ALJ acknowledged Nygra's five-week mental hospitalization in 2017 for a major depressive disorder with psychotic features, but heavily relied on that there was "little to no mental health treatment" before and after that hospitalization. (AR 21-22). While that is an accurate assessment of the record, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Seamon v. Barnhart*, No. 05-C-13-C, 2005 WL 1801406, at *19-20 (W.D. Wis. July 29, 2005) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). "Courts have long recognized the inherent unfairness of placing emphasis on a claimant's failure to seek psychiatric treatment . . . ." *Sparks v. Barnhart*, 434 F. Supp. 2d 1128, 1135 (N.D. Ala. 2006).

Nor is there any indication in the decision that the ALJ considered that Nygra's mental illness may have prevented him from seeking treatment or consistently taking his psychotropic medications.[2] The ALJ did not ask Nygra at the hearing about the reasons why he did not always seek treatment or take his prescribed medications. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ must not draw any inferences about a claimant's condition from this failure [to obtain medical treatment] unless the ALJ has explored the claimant's explanations as

---

[2] Notably, at one point during the hearing, Nygra testified that it was only physical problems that prevented him from working, but not long thereafter, Nygra cited "other problems" that he had been dealing with. (ECF 39-40). Nygra elaborated:

> Well I had a disgruntled police officer, he put metal in my head, and they've been torturing me on a daily basis. It's called electronic harassment. And I've been dealing with this for five years. And there's an investigation going on right now involving the FBI. They're, they're investigating it.

(AR 40; *see also* AR 42 ("Well, yeah, daily they try to harm me."), 45 ("He wanted to go to the emergency room. He claims that the police in Beech Grove, Indiana implanted something in him and they're shocking him constantly. He gets headaches and everything else.")).

to the lack of medical care." (citation and internal quotation marks omitted)); *Gale v. Berryhill*, No. 1:16-CV-04614, 2017 WL 902878, at *6 (N.D. Ill. Mar. 7, 2017) (remanding credibility determination where the ALJ discredited the claimant based on his noncompliance with medication without ever inquiring into the claimant's reasons for stopping the medication); SSR 16-3p, 2017 WL 5180304, at *9 ("When we consider the individual's treatment history, we may consider . . . [a]n individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding . . . mental stressors that aggravate his or her symptoms.").

      The ALJ's consideration of Nygra's visit to the emergency room in October 2018 is also problematic.  The emergency room physician documented Nygra's delusions "about a 'cop' trying to poison him with metals" and that he had not been taking his medications, but concluded that he was not a candidate for an emergency detention order at the time.  (AR 1657).  The ALJ considered this emergency room record but focused on that Nygra was "not a candidate for an emergency detention order . . . . and admit[ted] to not taking his psychotropic medication at this time."  (AR 22).  But it is unclear how Nygra's failure to qualify for an emergency detention order precludes his report of continued psychotic symptoms that interfere with his ability to sustain full-time employment.  As the Seventh Circuit Court of Appeals has observed, "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce . . . ." *Hizer v. Berryhill*, No. 4:16-CV-00092, 2018 WL 4059821, at *5 (N.D. Ind. Aug. 24, 2018) (quoting *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011)).

      Nor did the ALJ discuss the portion of the emergency room physician's report that was consistent with Nygra's and his father's testimony.  The physician wrote that she "spoke extensively with [Nygra's] father" who was aware of the psychosis and was "trying to get

11

[Nygra] to follow up with Porter Starke Services." (AR 1657). "Courts have been very clear that an ALJ must account for the effect that mental illness may have on a claimant's treatment history." *Barnes v. Colvin*, 80 F. Supp. 3d 881, 886 (N.D. Ill. 2015). The Seventh Circuit has emphasized that "mental illness in general . . . may prevent the sufferer from taking [his] prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 730 (7th Cir. 2006); *see also Barnes*, 80 F. Supp. 3d at 886 (collecting cases).

Thus, given Nygra's mental illness, the ALJ erred when discounting Nygra's symptom testimony by heavily relying on his sparse treatment history and failure to consistently comply with prescribed medications. See SSR 16-3p, 2017 WL 5180304, at *9-10 ("When we consider the individual's treatment history, we may consider . . . [d]ue to a mental impairment (for example, individuals with mental impairments that affect judgment, reality testing, or orientation), an individual may not be aware that he or she has a disorder that requires treatment.").

d. Objective Medical Evidence

The ALJ also concluded that the severity of Nygra's symptom testimony was not well supported by the objective medical evidence. (AR 21). Of course, an ALJ is to consider the objective medical evidence, or lack thereof, as a factor in assessing a claimant's symptom testimony. 20 C.F.R. § 404.1529(c)(2); *see Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("[S]ubjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Powers*, 207 F.3d at 435-36 ("The discrepancy between the degree of pain attested to by the witness and that suggested by the medical evidence is probative that the witness may be exaggerating her condition.").

12

In reaching this finding the ALJ again heavily relied on evidence of record dated prior to Nygra's November 2017 decompensation and hospitalization.  For example, the ALJ noted that prior to his hospitalization Nygra's mental status examinations were "generally within normal limits."  (AR 21 (citing AR 413, 415, 441); AR 22 (citing AR 492)).  But the ALJ also considered that Nygra was hospitalized for five weeks for a major depressive disorder with psychotic features in November 2017 after presenting as disheveled with poor eye contact, malnourished, depressed mood, and impaired judgment and insight.[3]  (AR 21 (citing AR 534-35, 1526)).  The ALJ further considered that upon discharge from the hospital Nygra was pleasant, cooperative, had no delusions, and had normal memory, despite still demonstrating poor judgment and insight.  (*Id.* (citing AR 1452)).  The ALJ also discussed Nygra's emergency room visit in October 2018, as described *infra*.  (AR 22).

Nygra does not challenge the ALJ's consideration of the objective medical evidence of record in connection with his assessment of Nygra's symptom testimony.  (*See* ECF 20 at 14-18).  But as the Seventh Circuit has explained, "symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone." *Slayton v. Colvin*, 629 F. App'x 764, 770 (7th Cir. 2015) (citing 20 C.F.R. § 404.1529(c)).  As such, an ALJ "may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Carradine*, 360 F.3d at 753 (citation omitted).

Therefore, though Nygra does not challenge the ALJ's consideration of the objective medical evidence, it cannot be the only factor upon which the ALJ relied when discounting his

---

[3] Though the ALJ does not note this in his decision, at the time of admission Nygra was also experiencing auditory and visual hallucinations, ideas of reference, persecutory delusions, and was in danger of harming himself. (AR 1525).

13

symptom testimony. Here, the material problems with the ALJ's consideration of the other factors under § 404.1529(c)(3) necessitate a remand of the ALJ's decision, so that Nygra's symptom testimony can be properly assessed in accordance with SSR 16-3p.

### D.  The RFC

Nygra also argues that the ALJ failed to evaluate his RFC in accordance with SSR 96-8. Specifically, Nygra contends that the ALJ: (1) failed to provide a basis in the record for the assigned RFC and improperly "interpret[ed] raw medical data"; and (2) failed to adequately account in the RFC for his moderate restrictions in concentration, persistence, or pace; his expected absenteeism and need for reminders; and his fatigue and need to lie down throughout the day. (ECF 20 at 5-13).

a. <u>Legal Standard</u>

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week.  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (second emphasis omitted). That is, the "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*."  *Id.* at *1; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 404.1545(a)(3). When determining the RFC, the ALJ must consider all medically determinable impairments, mental

14

and physical, even those that are non-severe. 20 C.F.R. § 404.1545(a)(2); *see also Craft*, 539 F.3d at 676.

"[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) (citations omitted) (finding that the ALJ "satisfied the [RFC] discussion requirements by analyzing the objective medical evidence, [the claimant's] testimony (and credibility), and other evidence"). "The ALJ need not provide a written evaluation of every piece of evidence, but need only 'minimally articulate' his reasoning so as to connect the evidence to his conclusions." *Id.* at 657-58 (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)); *see also Catchings v. Astrue*, 769 F. Supp. 2d 1137, 1146 (N.D. Ill. 2011).

      b. <u>Evidentiary Deficit</u>

When considering the opinion evidence, the ALJ observed that Joelle J. Larsen, Ph.D., and Ann Lovko, Ph.D., the state agency psychologists, found in November 2016 and April 2017 that Nygra's mental impairments were nonsevere. (AR 22 (citing AR 60, 71)). While Nygra submitted medical records from his treating and consulting providers, no provider completed a medical source opinion or assigned him specific mental limitations, and thus, there were no other medical opinions of record addressing his restrictions. Ultimately, the ALJ assigned the state agency doctors' opinions "little weight" and instead found Nygra's anxiety and depression to be "severe" at step two. (AR 17, 22). Nygra contends that once the ALJ rejected the state agency doctors' opinions, the ALJ, in essence, was left with a medical evidentiary deficit, improperly relying instead on his own interpretation of psychological findings and translating them into

15

functional restrictions.  (ECF 20 at 5).

"When an ALJ denies benefits, he must build an 'accurate and logical bridge from the evidence to [his] conclusion,' and he may not 'play doctor' by using his own lay opinions to fill evidentiary gaps in the record." *Chase v. Astrue*, 458 F. App'x 553, 556-57 (7th Cir. 2012) (citations omitted).  "[A] long factual recounting of the medical record" does not equate to a minimal articulation of the evidence such that the Court "can trace a path to the ALJ's reasoning." *Betts v. Colvin*, No. 13-cv-6540, 2016 WL 1569414, at *3 (N.D. Ill. Apr. 19, 2016). An ALJ "need[s] to explain how [he] reached [his] conclusions about [the claimant's] physical [and mental] capabilities." *Scott*, 647 F.3d at 740 (citations omitted). Further, "[i]t is an ALJ's responsibility to recognize the need for further medical evaluations of a claimant's conditions before making RFC and disability determinations . . . ." *Chase*, 458 F. App'x at 557 (citations omitted); *see also Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010).  An ALJ may not "fabricate a mental RFC out of whole cloth." *Vian v. Comm'r of Soc. Sec.*, No. 1:15-cv-00040-SLC, 2017 WL 461561, at *10 (N.D. Ind. Feb. 2, 2017) (citing *Betts*, 2016 WL 1459414, at *3).

When assigning the RFC, the ALJ did include various limitations concerning Nygra's mental functioning, limiting him to simple, work-related decisions and simple, routine tasks with no assembly line work or strictly-enforced daily production quotas; working in proximity to coworkers but only brief, incidental interaction with others and no tandem job tasks requiring cooperation with other works to complete the task; and occasional interaction with supervisors but no interaction with the public.  (AR 20).  But in doing so, the ALJ failed to minimally articulate his reasoning as to how he arrived at these mental limitations.  Rather, after summarizing Nygra's mental health records, the ALJ simply pronounced:

16

> Based on the above, while there is evidence of some findings, the record fails to substantiate the claimant's allegations of severe loss of functioning due to mental impairment. Accordingly, the [RFC] takes into account the claimant's mental impairments and associated limitations by finding him only capable of unskilled work with limited to no interaction with others, as well as environmental limitations, as above-referenced. The objective record fails to support any greater degree of mental limitation(s).

(AR 22).

"[The ALJ's] omission [of his reasoning] in itself is sufficient to warrant reversal of the ALJ's decision." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (remanding the case where the ALJ did not explain how he arrived at the physical limitations in the RFC). Simply put, the ALJ appeared to craft the mental RFC out of whole cloth, which is unacceptable. *See, e.g.*, *Young*, 362 F.3d at 1002 (finding that the ALJ failed to explain the difference in contact limits between different groups); *Novak v. Berryhill*, No. 15 CV 50236, 2017 WL 1163733, at *7-8 (N.D. Ill. Mar. 29, 2017) (finding that the ALJ's conclusion that the claimant could not meet fast-pace or strict quotas but could meet end-of-day production quotas, was not supported by substantial evidence where no medical provider opined as such and the ALJ cited no evidence to support his conclusion).

In sum, most of the ALJ's discussion when assigning the RFC amounted to merely a recitation of information contained in Nygra's medical records. But summary is not analysis. As a result, the ALJ failed to build an "accurate and logical bridge between the ALJ's recitation of the mental medical evidence and the decision to account for [Nygra's] mental impairments" by the limitations in the RFC. *Craft*, 539 F.3d at 677-78 (internal quotation marks omitted). And while "the primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant," *Flener ex rel. Flener v. Barnhart*, 361 F.3d

17

442, 448 (7th Cir. 2004), "[i]t is an ALJ's responsibility to recognize the need for further medical evaluations of a claimant's conditions before making RFC and disability determinations," *Chase*, 458 F. App'x at 557 (collecting cases). Here, the ALJ did not rely on any medical source opinions for the limitations included in the RFC, resulting in the ALJ assigning an RFC that, at least in part, lacked the support of substantial evidence. Consequently, the Commissioner's final decision should be reversed and remanded for further consideration and articulation of the RFC and the ALJ's reasoning relating thereto.[4]

## IV.  CONCLUSION

For the foregoing reasons, I RECOMMEND that the Commissioner's final decision be REVERSED, and the case REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation. The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties. NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations.

---

[4] Because a remand of the RFC is required on this basis, the Court need not reach Nygra's remaining arguments challenging the RFC. Having said that, the ALJ should be encouraged upon remand to incorporate Nygra's moderate restrictions in concentration, persistence, or pace expressly into the RFC and the hypothetical questions posed to the VE to eliminate any doubt whether the RFC sufficiently accounted for such deficits, given that no medical provider of record translated such restrictions into a functional ability in a medical source statement. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010) ("Our cases, taken together, suggest that the most effective way to ensure that the [vocational expert] is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical."); *see, e.g.*, *DeCamp v. Berryhill*, 916 F.3d 671, 675-76 (7th Cir. 2019) (rejecting a limitation to "'unskilled work' with no 'fast-paced production line or tandem tasks,'" stating that "[w]e have previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, or pace"); *Justin H. v. Berryhill*, No. 2:18cv383, 2019 WL 2417423, at *8-11 (N.D. Ind. June 7, 2019) (remanding case for failure to sufficiently account for moderate deficits in concentration, persistence, or pace where the ALJ limited the claimant, who suffered from hallucinations, to "simple, routine and repetitive tasks but not at a production rate pace (e.g., assembly line work)"); *Spears v. Colvin*, No. 1:15-cv-01946-MJS-MPB, 2016 WL 5851592, at *4 (S.D. Ind. Oct. 5, 2016) (same with respect to a limitation to "routine, uninvolved tasks not requiring a fast assembly quota pace").

Fed. R. Civ. P. 72(b).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.  *See generally Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239, 241-42 (7th Cir. 1996).

    Entered this 5th day of March 2021.

                                      /s/ Susan Collins
                                      Susan Collins
                                      United States Magistrate Judge